## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JERONE JONES, )<br>    Petitioner, )<br>)<br>v. )<br>)<br>)<br>STEVEN O'BRIEN, Superintendent, )<br>Old Colony C.C., and MARTHA )<br>COAKLEY, Attorney General of )<br>Massachusetts, )<br>    Respondents. ) | Civil Action No. 09cv10919-NG |

GERTNER, D.J.:

### MEMORANDUM AND ORDER RE: PETITION FOR WRIT OF HABEAS CORPUS
### May 21, 2010

      State prisoner Jerone Jones ("Jones") is serving a fifteen to eighteen year sentence for involuntary manslaughter concurrently with a five year sentence for illegal possession of a gun. Having exhausted his state court appeals, he now petitions for a writ of habeas corpus under 28 U.S.C. § 2254. He claims that the trial court's decision to exclude his girlfriend, Gwynne Doyle ("Doyle"), from a pre-trial hearing on his motion to suppress, without sufficient inquiry or justification, was a violation of his right under the Sixth Amendment to a public trial. He also claims that the trial court violated his Fifth Amendment right to silence by erroneously considering whether his expression of remorse was adequate in deciding his sentence. Since the Massachusetts Appeals Court's findings on review from the trial court were not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts, I **DENY** Jones's writ for habeas relief (document #1).

**I.     BACKGROUND**

On January 27, 2004, Jones and Doyle were riding together on Route 93. Commonwealth v. Jones, 71 Mass. App. Ct 568, 569 (Mass. App. Ct. 2008) (hereinafter "Jones"). Doyle was driving and Jones was in the front passenger seat. Id. Jones was carrying a handgun, which he claims was his practice as a drug dealer. Id. He stated he was also carrying the gun out of fear that a former boyfriend of Doyle was stalking them. Id. As they were driving, a confrontation occurred between their car and a car driven by the victim. Id. Jones claimed the victim's car drove closely behind, and then alongside theirs. In response, Jones became worried and drew his gun with his finger on the trigger. Id.

At trial, the Commonwealth argued that Jones then deliberately reached across Doyle, with the gun in his hand, and intentionally fired a shot at the victim, fatally hitting her in the head. Id. Jones argued that the vehicles careened together at high speed, creating an impact that caused his gun to accidently discharge. Id. After the gun went off, both cars lost control and careened into the left guard rail. Id.

When police arrived at the scene of the accident, Jones initially denied that he had a gun, but later suggested that they look for it in the console of his car. Id. at 570. The gun was eventually recovered from Doyle's waistband as emergency medical technicians attended to her. Id. Jones also stated to the police that the gun fired inadvertently upon loading and cocking it, and he was afraid that he had shot Doyle. Id. At the state police barracks, he was told that Doyle had not been hit, but that the driver of the other car had been killed. Id. Jones then said that, while it might be "a homicide," it was not "a murder." Id. When asked what he did with the gun, he said he "probably" passed it to Doyle. Id.

The state indicted Jones on March 9, 2004, for first degree murder, Mass. Gen. Laws ch. 265 § 1, and possession of a firearm without a license, Mass. Gen. Laws ch. 269 § 10(a). Id. Doyle was also criminally charged, both as an accessory after the fact of the victim's murder and for unlawfully carrying a firearm. Id. The Superior Court denied Jones' motion to join his case with Doyle's on September 12, 2005. Id.

Before trial, Jones and Doyle separately moved to suppress certain statements that they had made to the police following the accident. Id. Jones' motion addressed his statements at the crime scene as well as his statements at the police station. At the start of the suppression hearing regarding Jones' motion, the prosecutor requested that the Superior Court exclude Doyle from the court room. Id. The defense attorney argued against this exclusion, noting that he did not "anticipate" calling her to testify during the trial, and neither did the prosecution. Pet'r's Mem. in Supp. of Pet. for Writ of Habeas Corpus ("Pet'r's Mem.") 7. In explaining his request, the prosecutor stated:

> Your Honor, [Doyle] has been attempting to contact, from what I understand, the defense, the Defendant. They still maintain communications. There were conversations between Mr. Jones shortly after he was arrested, which would indicate that someone was providing funds to her to keep – to help support her. I just think her presence in the courtroom would not be beneficial to a motion to suppress on Mr. Jones. Also, [it] would give her some semblance of [the] type of questions that would be ask[ed] concerning her pending motions to suppress herself.

Id. at 8. The judge allowed the exclusion, simply responding, "All right. I will sequester her." Id. The courtroom remained otherwise open to the public. Jones at 572. The Court denied Jones' motion to suppress on April 21, 2005. Id. at 570. On September 22, 2005, a jury acquitted Jones of murder, but convicted him of involuntary manslaughter and the firearm possession charge. Id.

Jones was sentenced to fifteen to eighteen years for manslaughter, and a concurrent term of five years to five years and one day for illegal possession of a firearm. Id. In the presentence report, and at the sentencing hearing, Jones expressed remorse for the first time. Pet'r's Mem. 1. In response, the prosecutor accused Jones of "lying through his teeth" because Jones "had eighteen months to take responsibility for [the shooting] and chose not to until [sentencing]." Id. 12-13. The trial judge referenced Jones' expression of remorse in sentencing him:

> As far as the defendant's claim here today of remorse and also that represented by counsel and contained in the presentence report, I had the opportunity of seeing the defendant on the stand as well as hearing all the evidence and the jury did and I don't know that [I] accept or credit the level of remorse that the defendant now presents or attempts to present to the Court.

Jones at 572, n. 2. After referencing the defendant's background and criminal record, the judge further noted:

> [W]hat I keep coming back [to] is that [I must accept] the defendant's version of taking out a loaded weapon . . . I think that I need to because I think that the jury did. . . . Regardless of who started it or who escalated it, the fact is to take out a loaded weapon while barreling down Route 93 and either point it or intend to point it, whatever happened, it just represents to me just a total disregard for the safety of people around him including himself, his girlfriend, and ultimately the public including obviously [the victim].

Id. at 576-577.

On direct appeal, the Massachusetts Appeals Court rejected Jones' constitutional claims, which are identical to the ones he now includes in his habeas petition.[1] Id. at 572, 577; Pet'r's Mem. 6. Regarding Jones' Sixth Amendment claim, the Appeals Court determinated that

---

[1] The Appeals Court did find that the trial court had erroneously sentenced Jones to a term of five years and one day for the firearm conviction, for which the maximum sentence is five years, and remanded for resentencing on that conviction.

Doyle's exclusion was not a closure of the court room in violation of the right to a public trial, but rather a "proper exercise of a judge's discretion to order the sequestration of witnesses." Id. at 571. Regarding Jones' Fifth Amendment claim, the Appeals Court explained that the sentencing judge "merely remarked that she was not sure if she accepted [the defendant's proffer of remorse]." Id. at 574. The judge's "single reference to the defendant's demeanor at trial" therefore "did not indicate she improperly imposed a harsher sentence due to questions of veracity." Jones at 575-6.

Jones requested further appellate review by the Supreme Judicial Court, which was denied on June 5, 2008. Commonwealth v. Jones, 888 N.E.2d 954 (Mass. 2008). Jones filed his habeas petition on May 28, 2009. Pet'r's Pet. For Writ of Habeas Corpus. Jones has also indicated that he has a pending motion to revise and revoke his sentence in the trial court and that no ruling will be made on the motion until the habeas petition is litigated. Id. 12.[2]

## II.    DISCUSSION

Jones advances two arguments:  (1) The trial court's decision to exclude his girlfriend from a hearing on his motion to suppress without sufficient inquiry or justification was a violation of his right under the Sixth Amendment to a public trial; and, (2) the trial court violated his Fifth Amendment right to silence by erroneously considering the quality of his expressed remorse in determining an appropriate sentence. Pet'r's Mem. 1-2. He argues that the Sixth Amendment violation requires that he be allowed to re-litigate suppression of his statements; and the Fifth Amendment violation requires resentencing. Id. at 6, 12.

---

2 Jones fails to elaborate on the basis for this pending state court motion.  There is no exhaustion issue, however, with the habeas petition presently in front of the Court as the two grounds for relief Jones submits in the petition were unquestionably exhausted at the state court level.  The Court can therefore address the merits of these claims.

A district court's habeas corpus review of claims previously adjudicated in the state courts is highly deferential.  Lindh v. Murphy, 521 U.S. 320, 334 n.7 (1997).  A federal court must determine whether the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  In passing the Antiterrorism and Effective Death Penalty Act (AEDPA), Congress meant for federal judges "to attend with the utmost care to state-court decisions, including all of the reasons supporting their decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance of the writ."  Williams v. Taylor, 529 U.S. 362, 386 (2000).

### A. Sixth Amendment Right to a Public Trial

Jones contends that the trial judge's decision to exclude Doyle from the courtroom during his suppression hearing violates his Sixth Amendment right to a public trial.  Pet'r's Mem. 6.  The right of a public trial under the Sixth Amendment "is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions."  Waller v. Georgia, 467 U.S. 39, 46 (1984) (quoting Gannett Co. v. De-Pasquale, 443 U.S. 368, 380 (1979)).  An accused is entitled, at the very least, to the presence of his friends, relatives and counsel during his trial.  In re Oliver, 333 U.S. 257, 271-2 (1948).  A right to a public trial includes the right to a public suppression hearing.  Waller, 467 U.S. at 43.  A judge may close a court "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."

Press Enterprise v. Superior Court, 464 U.S. 501, 510 (1984). In such a situation, that interest "is to be articulated along with findings specific enough that a reviewing court can determine whether a closure order was properly entered." Id.

In contrast, a judge has broad discretion to remove individuals he or she deems to be potential witnesses from a courtroom. Sequestering witnesses is an "alternative" to closing a courtroom. See Richmond Newspapers v. Virginia, 448 U.S. 555, 581 (1980); Gannett Co. v. DePasquale, 443 U.S. 368, 441 (1979) (Blackmun, J., concurring in part and dissenting in part). A judge has the "power to control the progress and, within the limits of the adversary system, the shape of the trial, [including] broad power to sequester witnesses before, during, and after their testimony." Geders v. United States, 425 U.S. 80, 87 (1976); United States v. Magana, 127 F.3d 1, 10 (1st Cir. 1997).

What law is applicable to Doyle's removal therefore depends upon a factual finding as to whether the trial judge was partially closing the courtroom or sequestering a potential witness. The Appeals Court determined that it was a sequestration. Jones at 571. Factual determinations by the Appeals Court are presumed correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The trial judge's statement during the hearing that she was "sequestering" Doyle strongly supports the Appeals Court's finding. Pet'r's Mem. 8. The Appeals Court explained its reasoning by noting:

> Doyle, whose own hearing and trial had yet to occur, continued to be a potential witness even though the parties "anticipated" that they were not *likely* to call her to testify and even though she possessed a privilege against testifying pursuant to the Fifth Amendment to the United States Constitution. At the time that the order was entered, neither side had made a commitment as to who might testify, nor had either side presented any evidence on the motion to suppress. Doyle still might have been called to testify because she was not only a percipient witness to the events giving

> rise to the charges, but also a witness to the defendant's physical condition during and following the events in question.

Jones at 571 (emphasis added). In response, Jones merely notes that the defense attorney told the judge that neither he nor the prosecutor "anticipated" calling her to testify. Pet'r's Mem. 11. Jones therefore has not demonstrated any "clear and convincing evidence to the contrary" of the Appeals Court's finding that, despite this "anticipation," Doyle was still a potential witness whom the trial judge sequestered. Therefore, the Appeals Court's finding that Doyle was a potential witness was reasonable in light of Doyle's involvement with the events in question and the early stage of the proceedings at the time of the removal.

Based on the finding that the trial judge sequestered Doyle, the Appeals Court then reasonably applied the correct federal law in determining whether the trial judge's action was appropriate. The Appeals Court noted that judges have broad discretion in sequestering potential witnesses. Jones at 571. This statement is in accordance with Geders, in which the Supreme Court held the trial judge appropriately sequestered all non-party witnesses, thereby preventing them from "tailoring" their testimony to that of earlier witnesses, aiding the court in detecting testimony that is less than candid, and preventing improper attempts to influence testimony in light of testimony already given. 425 U.S. at 87. Removing Doyle from the courtroom similarly served the purpose of preventing her from tailoring her testimony regarding the events at issue either in Jones' trial or her own hearing. Sequestration thereby helped the court discern any potential discrepancies in Jones' and Doyle's testimony. As the sequestration of witnesses is left to the discretion of the trial judge, the Appeals Court correctly applied clearly-established federal law to find that the trial judge, within her discretion, properly removed Doyle from the courtroom.

Jones' argument that the Appeals Court unreasonably applied federal law because it did not apply the Waller test for determining whether a public hearing may be closed is therefore misplaced. Although Jones correctly notes that the Appeals Court never cited the applicability of Waller or mentioned an "overriding interest" that required excluding Doyle, the Appeals Court reasonably determined that Waller does not apply to this case. The Supreme Court held in Waller that the lower court erred in not giving an "overriding interest" for its decision to *completely close a hearing* to all individuals except witnesses, court personnel, the parties, and the lawyers. 467 U.S. at 42. In the instant case, however, the trial judge did not give a reason for removing Doyle from the courtroom, but she was not required to do so when merely sequestering a potential witness. Habeas relief is therefore unwarranted on this claim.

### B.     Fifth Amendment Right to Silence

Jones also argues that the trial court infringed his right to silence under the Fifth Amendment by considering his failure to show remorse until his sentencing as a factor when deciding his sentence. Pet'r's Mem. 12. The Fifth Amendment prevents criminal defendants from being compelled to testify against themselves, including at sentencing proceedings. Mitchell v. United States, 526 U.S. 314, 327 (1999). A judge therefore cannot draw a negative inference from a defendant's silence during sentencing. Id. at 330. Besides this limitation, however, a sentencing judge generally "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the course from which it may come." Nichols v. United States, 511 U.S. 738, 747 (1994) (quoting United States v. Tucker, 404 U.S. 443, 446 (1972)). Therefore, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing

an appropriate sentence." United States v. Grayson, 438 U.S. 41, 50 (1978) (quoting 18 U.S.C. § 3577).

Accordingly, a showing of remorse, or lack thereof, may be a factor in a judge's sentencing consideration. See, e.g., United States v. Jahagirdar, 466 F.3d 149, 157 (1st Cir. 2006) (holding that a district court's reliance on the defendant's lack of remorse as a factor in sentencing was reasonable). One court has dealt with precisely the question here, and explained that while the Fifth Amendment "provides a 'safeguard against judicially coerced self-disclosure' that extends to the sentencing phrase of a criminal proceeding, it does not bar a court from considering a defendant's lack of remorse." Bohan v. Kuhlmann, 234 F. Supp. 2d 231, 271 (S.D.N.Y. 2002) (citing Mitchell, 526 U.S. at 322)).

In determining whether the trial judge violated the defendant's Fifth Amendment right to silence, the Appeals Court noted that a district court may consider many factors in determining sentencing. The Appeals Court acknowledged that a trial judge is "permitted 'great latitude' in sentencing." Jones at 572, quoting Commonwealth v. Derouin, 31 Mass. App. Ct. 968, 970 (1992). Factors that a judge may consider include "the defendant's behavior, character [and] background." Id. The Appeals Court therefore applied the correct legal rules in its analysis of the judge's sentencing decision.

To support his argument that the Appeals Court decision was an unreasonable application of the law to the facts of the case, Jones notes that his case "is not like" Grayson. Pet'r's Mem. 14-15. In Grayson, the Supreme Court held that a judge could consider whether a defendant gave perjured testimony in considering sentencing. 438 U.S. at 53-4. The Appeals Court's single citation to Grayson, however, consists merely of a footnote mentioning that cases

discussing consideration of remorse in sentencing are based in part on a judge's ability to consider the defendant's veracity. Jones at 574, n. 3. Moreover, while perjured testimony is clearly not at issue in Jones' case, the underlying reasoning behind the court's specific holding in Grayson is applicable to this case. As previously noted, the Court in Grayson held that a judge may take into account a wide range of factors when considering sentencing, which is a "fundamental sentencing principle." Id. at 50. These factors include whether a defendant has been truthful, an issue that the trial judge raised at Jones' sentencing. The Appeals Court, therefore, did not unreasonably apply established federal law in citing to Grayson, which is applicable to this case.

The Appeals Court's ultimate finding that the trial judge did not take into account the defendant's lack of remorse in determining sentencing was a reasonable determination of the facts in light of the evidence presented. Factual determinations by the Appeals Court are presumed correct absent clear and convincing evidence to the contrary. Miller-El, 537 U.S. at 340. The Appeals Court found that the facts were insufficient to raise a Fifth Amendment issue, determining that there was "no indication that the judge in this case endorsed the prosecutor's sole remark relating to remorse -- that the defendant had eighteen months to take responsibility and chose not to." Jones at 575. The judge's "single reference to the defendant's demeanor at trial" therefore "did not indicate she improperly imposed a harsher sentence due to questions of veracity." Jones at 574-575. With no clear and convincing evidence to the contrary, the Appeals Court's finding that the trial judge did not improperly take into account Jones' pre-trial silence is reasonable and Jones' Fifth Amendment claim is therefore untenable. Habeas relief is not warranted.

### III.     CONCLUSION

For the reasons set forth above, Jerone Jones' Petition for Writ of Habeas Corpus is hereby **DISMISSED**.

**SO ORDERED.**

**Date:   May 21, 2010**            */s/ Nancy Gertner*
                                    **NANCY GERTNER, U.S.D.C.**